## SHEEHAN v. CROSBY.

PROMISSORY NOTE.—*Action on Lost Note.*—An action can not be maintained, as upon a lost instrument, against the maker of a promissory note payable to the plaintiff, signed by the maker, but destroyed by him without having delivered the same to the plaintiff.

HUSBAND AND WIFE.—*Money Loaned to Wife.*—A husband is not liable for money loaned to his wife without his knowledge or consent.

From the Marion Superior Court.

*A. F. Denny*, for appellant.

*N. B. Taylor, F. Rand* and *E. Taylor*, for appellee.

BIDDLE, C. J.—Complaint by appellee, against appellant, on a promissory note alleged to have been lost or destroyed, and on a common count for money had and received.

Answer; reply; issue; trial by the court; finding for appellee; judgment over a motion for a new trial, and exception. Appeal to the general term; judgment affirmed; appeal to this court.

The only question presented in the case is as to the sufficiency of the evidence to support the finding.

The appellee testified: " I am the plaintiff. I am a sister of defendant's wife. In the month of May, 1872, the defendant, Sheehan, was about to build a two-room addition to his house. Defendant's wife, knowing that I was about to receive one hundred and twenty dollars, asked me to loan it to her to assist in building the addition to the defendant's house. I had been working for Mr. George Lowe. He owed me one hundred and twenty dollars. In May, 1872, he paid it to me, and I loaned it to my sister, who said they wanted the money to build an addition of two rooms to her husband's house. After they got the money, they proceeded with the building immediately, and continued the work until the money gave out, and then it stood awhile, because they could not get money enough to complete it. About

two weeks after I loaned the money, I asked the defendant to give me a note for the money, and he wrote a note for one hundred and twenty dollars, and tore it up into pieces, and handed it to me, saying, this is your note. I did not read what was on the paper, and did not take the pieces. No one was present but defendant, his wife and myself. He promised before and after he tore up the note to give me his note. Afterward, in the month of August, I loaned defendant's wife eighty dollars, in two parts, of forty dollars each, for the purpose of making improvements on her own real estate. Both the above sums are unpaid.

" I was not living at defendant's house at the time the addition was built. I do not know from my own knowledge, nor from anything the defendant has said, that the one hundred and twenty dollars were used in building the addition to the defendant's house. I never read the note he offered me. Do not know for what amount it was given, nor when it became due. It may have been payable in one, two, three, four or five years, from anything I know to the contrary. Defendant was not present when I loaned the money to his wife. He never asked me for money, because he knew I would not trust him. I used to loan money to Mrs. Lowe, Mr. Lowe's wife, when I was working for Mr. Lowe. Defendant's wife, at the time I loaned the one hundred and twenty dollars, was working out, and had previously been working out, earning money. She had money of her own. The eighty-dollar loan was for Mrs. Sheehan's own use."

The appellant testified: "I am the defendant. I married a sister of the plaintiff. I own the lot on which I live, and lived there in 1872, when I made an addition of two rooms to the house. My wife also owns real estate in her own right. I never borrowed money from the plaintiff, nor authorized my wife to borrow any. I never asked the plaintiff for any money, nor requested that my wife ask her for any. I did not know that plaintiff had

loaned my wife money—that is, the one hundred and twenty dollars—until some time after the loan was made. I never signed a note to plaintiff, and never delivered to her a note torn in pieces. I never authorized my wife to get money of plaintiff. My wife has now, and usually has had, money of her own. I frequently got money from her. I got fifty dollars from her even before I married her. I may have got money from her to put into the two-room addition I have spoken of; I do not remember. If I did, I did not know that it was plaintiff's money."

This was all the evidence given in the case touching the liability alleged in the complaint. We do not think that it sustains the finding. It is very clear that no case is made on the alleged lost note, and, according to the appellee's own testimony, the credit was given to the wife of the appellant, and not to the appellant. In such cases the husband is not liable. This principle was fully discussed and settled in the case of *Meiners* v. *Munson*, 53 Ind. 138.

The judgment is reversed, with costs; and the cause remanded, with instructions to sustain the motion for a new trial, and for further proceedings.